UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| **OMENMA ABENGOWE,**  )<br>Plaintiff,                       )<br>                                      )<br>                                      )<br>V.                                  )<br>                                      )<br>                                      )<br>**GREYHOUND LINES, INC.;**  )<br>**FLIX NORTH AMERICA, INC.;**  )<br>**and JOHN DOE 1 (G/F Bus Driver)**, )<br>Defendants.                    ) | Civil Action No.: _____ |

## COMPLAINT AND JURY DEMAND

Plaintiff Omenma Abengowe ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Defendants Greyhound Lines, Inc., Flix North America, Inc., and John Doe 1, and states the following:

### I. INTRODUCTION

1. This action arises from an October 31, 2025 assault, battery, discriminatory denial of transportation, breach of contract, and civil-rights violation committed by a Greyhound/FlixBus driver ("John Doe 1") and ratified by Greyhound/FlixBus management. Plaintiff, a Black woman, Harvard College senior, and United States Air Force service-member, was physically pushed backward down the bus stairs, screamed at, verbally abused,

1

falsely accused of "breaking a federal law," and unlawfully denied boarding at 2:58 PM for a 3:00 PM departure—despite holding a valid ticket and arriving early.

2. These acts escalated into a clear civil-rights violation when the same driver later allowed a late, ticketless non-Black male passenger onto the same bus for free approximately one hour after denying the Plaintiff boarding.

3. Plaintiff brings claims under 42 U.S.C. § 1981; assault; battery; intentional infliction of emotional distress; negligent hiring, training, and supervision; vicarious liability/ *respondeat superior*; breach of contract; and negligent infliction of emotional distress. She seeks compensatory damages, punitive damages, attorney's fees, and all available remedies.

## II. PARTIES

4. Plaintiff Omenma Abengowe is a resident of Massachusetts and, at all relevant times, was a Harvard College senior and enlisted servicemember in the United States Air Force.

5. Defendant Greyhound Lines, Inc. is a Delaware corporation with headquarters in Dallas, Texas, operating intercity bus transportation nationwide and conducting business regularly in Massachusetts.

6. Defendant Flix North America, Inc. is a Delaware corporation headquartered in San Francisco, California, and the parent/operating company managing Greyhound's North American operations.

7. Defendant John Doe 1 is the Greyhound/FlixBus driver who assaulted, battered, verbally abused, and discriminated against Plaintiff while acting within the scope of his employment. His identity will be substituted upon discovery.

### III. JURISDICTION AND VENUE

8. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because the Complaint asserts claims under 42 U.S.C. § 1981.

9. This Court has supplemental jurisdiction over all state-law claims under 28 U.S.C. § 1367.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Boston, Massachusetts.

### IV. FACTUAL ALLEGATIONS

**A. Plaintiff Arrives Early With a Valid Ticket**

11. On October 31, 2025, Plaintiff arrived at Boston South Station at approximately 2:55 PM for a 3:00 PM Greyhound/FlixBus departure to Springfield, Massachusetts.

12. Plaintiff approached the bus gate where the driver—Defendant John Doe 1—was holding the bus door open. Plaintiff stated: "I'm here for the Springfield bus." The driver looked at her but said nothing, then turned and walked into the bus parking area.

3

13. Plaintiff followed to the foot of the bus steps and stood on the pavement at the entrance, waiting to have her ticket scanned.

14. At approximately 2:56 PM, the driver paced in front of the bus, spoke briefly with another driver, then returned toward Plaintiff and abruptly yelled: "Get the fuck out of my way."

**B. Plaintiff Politely Seeks Boarding — the Driver Responds With Hostility**

15. Plaintiff, believing he was joking, moved aside and politely repeated: "Excuse me, this is the Springfield bus? I have a ticket to Springfield."

16. She displayed her ticket on her phone.

17. The driver responded: "Nope, you're late."

18. Plaintiff showed her phone time—2:57 PM—and stated she was clearly early.

19. The driver then said: "Nope, you're not late. I closed the gate. You can't get on."

20. When Plaintiff asked why he could not let her board, he snapped: "I don't know what you don't understand. You are late. You need to get off right now."

**C. False Accusation of Criminality**

21. As Plaintiff began recording the interaction at 2:58 PM, the driver called her a "shithead."

22. He then falsely stated: "You're breaking a federal law right now."

23. No such law exists.

24. The accusation was intended to intimidate a young Black woman and force her off the bus area.

**D. The Physical Shove**

25. Plaintiff stood on the first step of the bus stairs, still outside on the pavement.

26. Without warning, the driver rose from his seat, approached her, and physically pushed her backward down the stairs, using his arm and upper body.

27. Plaintiff repeatedly said, "Stop pushing me," but he continued advancing.

28. Multiple passengers witnessed the assault, began recording, and loudly stated—on video—that they had seen Plaintiff arrive at 2:55 PM.

**E. The Manager Arrives — and Minimizes the Assault**

29. At approximately 2:58 PM, a Greyhound/FlixBus manager approached.

30. The manager chuckled and said, "Don't worry about him," dismissing the driver's abusive behavior as routine.

31. The manager quickly looked at Plaintiff's ticket and asked the driver: "Can you let her on?"

32. The driver responded: "Yeah, for you I will. But for shitheads like this I would for sure never do that."

33. This exchange reflected rapport, familiarity, and tacit approval between the driver and manager.

34. The manager's reaction evidenced corporate ratification of conduct and normalized hostility toward passengers.

### F. Boarding and Continued Verbal Abuse

35. As Plaintiff entered the bus aisle, the driver muttered: "You don't belong on this bus, bitch."

36. Her assigned seat was 14C, but as dozens of passengers stared, humiliated and shaken, she sat in row 4 instead.

37. She then cried for the entire ride to Springfield.

### G. The Worcester Incident — Direct Evidence of Racial Animus

38. At the Worcester stop, a non-Black male passenger boarded and told Plaintiff that the driver had allowed him to board for free—even though he had no ticket, had arrived late, and had been literally chasing the bus.

39. The contrast is stark: a Black woman, early, with a valid ticket, was physically pushed, verbally abused, and nearly denied boarding, while a late, ticketless non-Black male was allowed on for free.

40. Differential treatment of similarly situated passengers is recognized as evidence of discriminatory intent. *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001).

41. The aggressive, violent conduct escalates the discriminatory inference into open hostility—the kind of racialized gatekeeping public-transportation law has long sought to eradicate.

**H. Breach of Contract and Violation of Terms of Carriage**

42. Plaintiff purchased a valid ticket—forming a binding contract.

43. Greyhound's Terms of Carriage do not require passengers to board early; §7.1 merely "recommends" arrival 15 minutes prior.

44. §7.2 states boarding may be denied only if a passenger is not present at the scheduled departure time—3:00 PM.

45. Plaintiff was present at 2:55 PM.

46. Denying her boarding at 2:58 PM was a clear breach of contract.

47. The driver's fabricated rule about the "gate not allowing" her to board was knowingly false.

48. Applying invented rules only to a Black passenger, while waiving rules entirely for a non-Black passenger, heightens the seriousness of the breach.

**I. Emotional Harm**

49. Plaintiff suffered intense humiliation, fear, panic, and trauma.

50. The assault, public degradation, and racialized exclusion caused ongoing emotional distress.

51. She continues to experience anxiety around transportation, authority figures, and public spaces.

## J. Respondeat Superior & Corporate Liability

52. The driver was acting within the scope of his employment: controlling boarding, enforcing timing rules (albeit falsely), wearing company uniform, and operating a company bus.

53. The manager's arrival—and dismissive attitude—constitutes corporate ratification under Massachusetts and federal principles of vicarious liability.

54. Greyhound/FlixBus are fully liable under *respondeat superior* and agency law.

## K. Evidence Preservation

55. Plaintiff specifically demands that Defendants preserve all evidence relating to this incident, including, but not limited to: (a) all video footage, audio recordings, and surveillance from Boston South Station, the bus interior, the bus entrance, and all stops on Route US0230 on October 31, 2025; (b) all driver gate logs, ticket scans, gate access records, dispatch logs, GPS and telematics data, and any electronic records reflecting boarding decisions; (c) all internal communications, text messages, emails, chat logs, Slack or equivalent messaging between the driver, the manager, dispatch, security, or

supervisory personnel; (d) the complete personnel files, employment histories, training records, disciplinary records, and prior complaint files of both the driver (John Doe 1) and the manager who intervened at 2:58 PM; (e) all incident reports, customer complaints, prior passenger grievances, and records of any similar misconduct by these employees; and (f) all passenger information, including names, emails, booking data, and seating assignments for all individuals on the October 31, 2025 Boston-to-Springfield 3:00 PM bus.

56. Defendants are hereby notified that any failure to preserve such evidence will give rise to a spoliation claim and an adverse inference instruction at trial.

## V. CAUSES OF ACTION

**Count I — 42 U.S.C. § 1981 (Race Discrimination – Contractual Interference)**

*(Against All Defendants)*

**Count II — Assault**

*(Against John Doe 1 and Greyhound/FlixBus via Respondeat Superior)*

**Count III — Battery**

*(Same)*

**Count IV — Intentional Infliction of Emotional Distress**

### Count V — Negligent Hiring, Training, and Supervision

*(Against Greyhound and Flix North America)*

### Count VI — Respondeat Superior / Vicarious Liability

*(Against Corporate Defendants)*

### Count VII — Breach of Contract

*(Against Greyhound/FlixBus)*

### Count VIII — Negligent Infliction of Emotional Distress

*(Against All Defendants)*

## VI. DAMAGES

Plaintiff seeks:

- Compensatory damages

- Emotional distress damages

- Contract damages

- Punitive damages (available under §1981)

- Attorney's fees

- Costs

- Pre- and post-judgment interest

- All other relief the Court deems proper

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(1) Award all categories of damages stated above;

(2) Enter judgment in Plaintiff's favor on all counts;

(3) Award punitive damages under §1981;

(4) Award attorney's fees;

(5) Grant any further relief deemed just and proper.

**Respectfully submitted,**

The Plaintiff,

Omenma Abengowe

By

**Joseph Resnek, BBO# 704525
PO BOX 505438
Chelsea, MA 02150
(617) 461-3462
<u>AttorneyJoeResnek@gmail.com</u>**

DATED: December 1, 2024

12